1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

LINDA-LISA MAGNUSON,                    )
                                        )
                    Plaintiff,          )
        v.                              )
                                        )
MICHAEL J. ASTRUE, COMMISSIONER )
OF SOCIAL SECURITY,                     )
                                        )
                    Defendant.          )
_____ )

Case No.: C 10-02324 PSG

**ORDER DENYING PLAINTIFF
LINDA-LISA MAGNUSON'S MOTION
FOR SUMMARY JUDGMENT AND
ORDER GRANTING DEFENDANT
MICHAEL J. ASTRUE'S CROSS-
MOTION FOR SUMMARY
JUDGMENT**

**(Re: Docket Nos. 19, 23)**

Plaintiff Linda-Lisa Magnuson ("Magnuson") filed this action on May 27, 2010, appealing

the decision by Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying her

disability insurance benefits.[1]   Magnuson moves for summary judgment.   The Commissioner

opposes the motion and cross-moves for summary judgment.   The matter was submitted without oral

argument, pursuant to Civ. L.R. 7-1(b).   Having reviewed the papers, Magnuson's motion for

summary judgment is DENIED and the Commissioner's cross-motion for summary judgment is

GRANTED.

---

[1]      The challenged decision was rendered by Administrative Law Judge Brenton L. Rogozen
(the "ALJ") on March 25, 2009.   The ALJ's decision became final on March 31, 2010, when the
Appeals Council of the Social Security Administration denied Magnuson's request for administrative
review of the decision.

**I. BACKGROUND**

The following facts are taken from the March 25, 2008 decision by the ALJ and the accompanying administrative record.  At the time of the hearing, Magnuson was fifty-six years old.[2] She had a high school education and had completed a few classes in early education at a local community college.[3]  For the past fifteen years, her only employment experience has consisted of a three-month stint working with the homeless in Santa Cruz.[4]  Magnuson resided in Section 8 housing and she previously sought treatment for emotional problems from the Santa Cruz County Health Choices Agency.[5]  She also sought related medical treatment from Stephen Halpern, M.D. on January 3, 2005, September 19, 2005 and February 6, 2006.[6]  In addition, she was in group therapy and under the care of a psychiatrist.[7]

Magnuson applied for supplemental security income on January 24, 2006, alleging disability since January 23, 1996 due to attention deficit hyperactivity disorder, post-traumatic stress syndrome, depression, and anxiety.[8]  Her application was denied initially and upon reconsideration.[9] The ALJ held an administrative hearing on February 29, 2008 in San Jose, California.[10]  Magnuson was represented by counsel and testified at the hearing.[11]  A vocational expert, James C. Westman, also testified at the hearing.[12]

The ALJ found that Magnuson was not disabled within the meaning of the Social Security

---

[2]   *See* Administrative Record ("AR") 35.

[3]   *See* AR 36-43.

[4]   *See id.*

[5]   *See* AR 36-37.

[6]   *See* AR 17.

[7]   *See* AR 42.

[8]   *See* AR 53, 61, 79-81.

[9]   *See* AR 53-57, 61-65.

[10]   *See* AR 15.

[11]   *Id.*

[12]   *Id.*

Act.[13]  The ALJ evaluated Magnuson's condition pursuant to the sequential process required by 20 CFR §§ 404-1520(a) and 416.920(a).[14]  At step one, the ALJ concluded that Magnuson had not engaged in substantial gainful activity since January 24, 2006, the application date.[15]  At step two, the ALJ found that Magnuson's depression (not otherwise specified) constituted a severe impairment under 20 CFR § 416.920(c).[16]  At step three, the ALJ concluded that Magnuson did not have an impairment or combination of impairments that met or medically equaled one of the impairments in 20 CFR Part 404, Subpart P, Appendix 1.[17]

In determining Magnuson's residual functional capacity, the ALJ found that while she had symptoms consistent with the underlying medically determinable impairment, her testimony regarding the intensity, persistence, and limiting effects of the symptoms was not credible.[18]  In support of his conclusion, the ALJ noted that Magnuson's complaints regarding the frequency, severity and duration of her depression, anxiety, memory problems, concentration problems and socially isolative behavior were not consistent with the objective medical evidence.[19]  Moreover, Magnuson had not reported any continuous side effects of medication.[20]  To the extent, there were any side effects, the ALJ observed that treatment notes reflect that medication was either adjusted or changed.[21]  Lastly, the ALJ noted that the medical record does not reflect that any treating physician has concluded that Magnuson should not engage in any work activity whatsoever.[22]

---

[13]     *See* AR 21.

[14]     *See* AR 15-17.

[15]     *See* AR 17.

[16]     *Id.*

[17]     *See* AR 17-19.

[18]     *See* AR 20.

[19]     *Id.*

[20]     *Id.*

[21]     *Id.*

[22]     *Id.*

1   At step four, the ALJ found that Magnuson had no past relevant work.[23]  At step five, the

2   ALJ found that Magnuson's residual functional capacity enabled her to perform other work that

3   exists in significant numbers in the national economy.[24]

4   Based on those determinations, the ALJ concluded that Magnuson was not disabled as

5   defined by the Social Security Act at any time through the date of his decision.[25]

6   ## II.  LEGAL STANDARDS

7   **A.     Standard for Reviewing the Commissioner's Decision**

8   Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's

9   decision denying Plaintiff benefits.  The Commissioner's decision (here the decision of the ALJ)

10  will be disturbed only if it is not supported by substantial evidence or if it is based upon the

11  application of improper legal standards.[26]  In this context, the term "substantial evidence" means

12  "more than a mere scintilla but less than a preponderance-it is such relevant evidence that a

13  reasonable mind might accept as adequate to support the conclusion."[27]  When determining whether

14  substantial evidence exists to support the ALJ's decision, the court examines the administrative

15  record as a whole, considering adverse as well as supporting evidence.[28]   Where evidence exists to

16  support more than one rational interpretation, the court must defer to the decision of the ALJ.[29]

17  **B.     Standard for Determining Disability**

18  A person is "disabled" for purposes of receiving disability insurance benefits if he or she is

19  unable to engage in any substantial gainful activity due to a physical or mental impairment that is

20  expected to result in death or that has lasted or is expected to last for a continuous period of at least

21

---

22  [23]    *Id,*

23  [24]    *See* AR 21.

24  [25]    *Id.*

25
26  [26]    *See Moncada v. Chater,* 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan,* 966 F.2d 1255, 1257 (9th Cir. 1992).

27  [27]    *See Moncada,* 60 F.3d at 523; *Drouin,* 966 F.2d at 1257.

28  [28]    *See Drouin,* 966 F.2d at 1257; *Hammock v. Bowen,* 879 F.2d 498, 501 (9th Cir. 1989).

[29]    *See Moncada,* 60 F.3d at 523; *Drouin,* 966 F.2d at 1258.

1   twelve months.[30]

2         Disability claims are evaluated using a five-step, sequential evaluation process.  In the first

3   step, the Commissioner must determine whether the claimant currently is engaged in substantial

4   gainful activity; if so, the claimant is not disabled and the claim is denied.[31]  If the claimant is not

5   currently engaged in substantial gainful activity, the second step requires the Commissioner to

6   determine whether the claimant has a "severe" impairment or combination of impairments that

7   significantly limits the claimant's ability to do basic work activities; if not, a finding of "not

8   disabled" is made and the claim is denied.[32]  If the claimant has a "severe" impairment or

9   combination of impairments, the third step requires the Commissioner to determine whether the

10  impairment or combination of impairments meets or equals an impairment in the Listing; if so,

11  disability is conclusively presumed and benefits are awarded.[33]  If the claimant's impairment or

12  combination of impairments does not meet or equal an impairment in the Listing, the fourth step

13  requires the Commissioner to determine whether the claimant has sufficient "residual functional

14  capacity"[34] to perform his or her past work; if so, the claimant is not disabled and the claim is

15  denied.[35]  The claimant has the burden of proving that he or she is unable to perform past relevant

16  work.[36]  If the claimant meets this burden, a *prima facie* case of disability is established.  The

17  Commissioner then bears the burden of establishing that the claimant can perform other substantial

18  gainful work;[37] the determination of this issue comprises the fifth and final step in the sequential

---

20      [30]    *See Drouin,* 966 F.2d at 1257; *Gallant v. Heckler,* 753 F.2d 1450, 1452 (9th Cir. 1984).

21      [31]    *See id.*

22      [32]    *See id.*

23      [33]    *See id.*

24      [34]    A claimant's residual functional capacity ("RFC") is what he or she can still do despite existing exertional and nonexertional limitations.  *See Cooper v. Sullivan,* 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

26      [35]    *See Drouin,* 966 F.2d at 1257; *Gallant v. Heckler,* 753 F.2d 1450, 1452 (9th Cir. 1984).

27      [36]    *See id.*

28      [37]    As discussed further below, there are two ways for the Commissioner to meet the burden of showing that there is other work in significant numbers in the national economy that claimant can do: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines.

1    analysis.[38]

2                                    **III.  DISCUSSION**

3             Magnuson requests that the court reverse the ALJ's final decision and remand the case to the

4    Social Security Administration for an award of benefits.  Alternatively, Magnuson requests that this

5    case be remanded for further administrative proceedings to determine whether she is disabled.  The

6    Commissioner in turn asks that the ALJ's final decision be affirmed.

7             The specific issues raised in this case are whether the ALJ properly (1) rejected the opinion

8    of the examining psychologist, Robert Sayad, PhD ("Sayad"); (2) failed to credit Magnuson's

9    testimony regarding the nature and extent of her functional limitations; and (3) relied on the

10   Medical-Vocational Guidelines to determine Magnuson's residual functional capacity instead of the

11   response by the vocational expert to the hypothetical question posed by Magnuson's counsel.

12   **A.      The ALJ Did Not Reject Improperly the Opinion of Psychologist Sayad**

13            Sayad conducted a consultative psychological evaluation of Magnuson on May 22, 2006.[39]

14   He diagnosed her with attention deficit hyperactivity disorder (by history), a learning disorder (by

15   history), a mood disorder (not otherwise specified), and an anxiety disorder (not otherwise specified

16   on Axis I).  He observed that Magnuson demonstrated distractibility on examination, and that she

17   presented as anxious and mildly hypomanic.  He found her oriented to person, place, and time and

18   assessed that Magnuson was not significantly limited in her ability to understand, remember, and

19   carry out very short and simple instructions.  He also found that Magnuson had a fair ability to

20   interact appropriately with co-workers, supervisors, and the public.  Based on the limitations of a

21   one-time evaluation and without the benefit of corroborative records, however, Sayad concluded that

22   he was unable to determine the degree of impairment of Magnuson's ability to maintain a level of

23   concentration and task persistence necessary to perform work activities within a schedule and to

24   complete a normal workday and workweek without interruption from untreated psychologically

25

26   *See Tackett v. Apfel,* 180 F.3d 1094, 1099 (9th Cir. 1999).

27            [38]    *See* 20 C.F.R. §§ 404.1520, 416.920; *Lester v. Chater,* 81 F.3d 821, 828 n. 5 (9th Cir.
28   1995), *as amended* April 9, 1996; *Drouin,* 966 F.2d at 1257.

            [39]    *See* AR 153.

based symptoms.

Magnuson argues that the ALJ improperly rejected Sayad's opinion even though his opinion was corroborated by specific treatment notes, by Magnuson's own testimony, and by other third-party statements.

First, Sayad's clinical observations noted that Magnuson had pressured and rapid speech, anxious mood, highly circumstantial thought processes, and nervous laughter. Magnuson states that these observations were corroborated by a psychiatrist, Dr. Arnaldo Solis in 2005, who noted that Magnuson spoke impulsively and tangentially (returning to topic only half the time), was easily distracted, and giggled, and by Anne Cavanaugh, MFC, MFT, who noted that Magnuson was difficult to interview due to her "flight of ideas" and being "hyper verbal tangential." Another mental health professional, Beverly Melby, LCSW, noted that Magnuson spoke as "currently pressured and tangential." She also noted that Magnuson had a severe level of anxiety, depression, lability, anhedonia, and was severely isolated with low energy. A social security representative and Magnuson's own daughter observed that Magnuson exhibited symptoms such as disorganization, poor concentration, and tendencies toward anxiety and depression.

Second, Sayad opined that Magnuson would not be able to maintain a level of concentration and task persistence necessary to perform work activities within a schedule and to complete a normal workday and workweek, and that his opinion was corroborated by the GAF finding of 40. According to Magnuson, the DSM, Fourth Edition (DSM-IV) shows that a GAF score of 31-40 reflects severe impairment and indicates behavior "considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (e.g. sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or inability to function in almost all areas (e.g., stays in bed all day, no job, home, or friends)." Magnuson complains that the ALJ gave only minimal weight to her GAF score because it had not been assigned by a psychiatrist or psychologist. Nevertheless, the ALJ stated that even if Magnuson's mental condition was severe enough on the day of the evaluation to warrant such a low GAF assessment, there is no evidence that her condition continued to be severe for a continuous period of 12 months.

Lastly, Magnuson complains that the ALJ credited the opinion of the state agency reviewing

1   physician (who did not examine Magnuson) more than the opinion of Sayad (who did examine

2   Magnuson).

3           The Commissioner disputes that the ALJ rejected Sayad's opinion.  Rather, he states that

4   while Magnuson's presentation suggested functional limitations regarding her ability to maintain a

5   level of concentration and task persistence necessary to perform work activities within a schedule

6   and to complete a normal workday and workweek without interruptions from her untreated

7   psychologically based symptoms, Sayad could not determine the degree of impairment based on the

8   limitations of a one-time evaluation and without the benefit of corroborative records.

9           The court agrees.  The ALJ did not reject Sayad's opinion out of hand; rather he recognized

10  the limitations that Sayad himself described in rendering his opinion.  It is true that the opinion of an

11  examining doctor is entitled to greater weight than the opinion of a non-examining doctor,[40] and the

12  opinion of the examining doctor, even if contradicted by another doctor, can only be rejected for

13  specific and legitimate reasons that are supported by substantial evidence in the record.[41]  But here,

14  the ALJ did not reject the opinion of an examining doctor in favor of a contradicting state agency

15  medical consultant.  Rather, the examining doctor admitted that he could not determine the extent of

16  the claimant's limitations.  To the extent the examining doctor offered observations, each was

17  supported by subjective complaints of the claimant that could be properly discounted by the ALJ in

18  view of his own assessment of the claimant's credibility.[42]  As a result, the court finds that the ALJ

19  did not reject Sayad's opinion improperly and that he did not err in weighing the opinion of the state

20  agency medical consultant along with the remainder of the record before him.[43]  The court further

21  finds that the ALJ did not err when he considered Magnuson's GAF score by noting its non-

22  physician source and non-psychologist source and weighing it against the claimant's testimony

23  regarding her activities, including attending school, doing chores, and shopping during at least some

24  _____

25  [40]      *See Pitzer v. Sullivan,* 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler,* 753 F.2d 1450 (9th Cir. 1984).

26  [41]      *See Andrews v. Shalala,* 53 F.3d 1035, 1043 (9th Cir. 1995).

27  [42]      *See Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 1992).

28  [43]      *Cf. Bray v. Astrue,* 554 F.3d 1219, 1221, 1227 (9th Cir. 2009 (holding that ALJ properly assessed residual functioning capacity "in large part on the DDS physician's assessment.").

1  portion of the alleged period of disability.[44]

2  **B.    The ALJ Did Not Improperly Fail to Credit Magnuson's Testimony**

3      Magnuson next argues that the ALJ improperly discredited her testimony regarding her

4  symptoms because he considered them inconsistent with the residual functional capacity assessment.

5  According to Magnuson, the ALJ further failed to provide clear and convincing reasons for doing so.

6      The Commissioner responds by stating that the ALJ set forth numerous and specific reasons

7  for discrediting Magnuson's testimony, including: (1) the "paucity" of treatment records; (2) her

8  reluctance to take any medications; (3) daily activities inconsistent with disability; and (4) the lack

9  of any medical assessments determining that she was unable to work entirely.

10      This court's review of the ALJ's decision regarding credibility determinations is limited.[45]

11  Undeniably, the ALJ's assessment of a claimant's credibility must be "properly supported by the

12  record" and "sufficiently specific" to assure the reviewing court that the ALJ "rejected the testimony

13  on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain."[46]

14  Absent affirmative evidence of malingering, an ALJ may not discount a claimant's testimony

15  without clear and convincing reasons.[47]  Nevertheless, the court must give deference to the ALJ's

16  assessment of Plaintiff's credibility if it is supported by the record and applicable legal standards.[48]

17      As an initial matter, the ALJ found that "the claimant's medically determinable impairments

18  could reasonably be expected to produce the alleged symptoms."[49]  He found, however, that

19  Magnuson's testimony regarding the intensity, persistence and limiting effects of these symptoms

20  

21      [44]    *See Tommasetti v. Astrue,* 533 F.3d 1035, 1041-42 (9th Cir. 2008) ("The ALJ is the final
22  arbiter with respect to resolving ambiguities in the medical evidence.").

23      [45]    *See Matney v, Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not
the reviewing court must resolve conflicts in the evidence, and if the evidence can support either
24  outcome, the court may not substitute its judgment for that of the ALJ.").

25      [46]    *See Bunnell v. Sullivan*, 947 F.2d 341, 345-346 (9th Cir. 1995) (quoting *Elam v. Railroad
Retirement Bd.,* 921 F.2d 1210, 1213-1214 (11th Cir. 1991) (quotations omitted)).

26      [47]    *See Vertigan v. Halter,* 260 F.3d 1044, 1049 (9th Cir. 2001).

27      [48]    *See Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001) (citing *Reddick v. Chafer,*
28  157 F.3d 715, 720 (9th Cir. 1998)).

    [49]    AR at 20.

was not credible to the extent they are inconsistent with the residual functional capacity assessment. For the next step of the analysis, the ALJ specifically determined that "[t]he claimant's complaints regarding the frequency, severity and duration of her depression, anxiety, memory problems, concentration problems, socially isolative behavior do not justify any further limitations than those based on the objective medical evidence and are generally consistent with the limitations found."[50]

The ALJ's opinion specifically notes the "paucity" of records reflecting any diagnosis or treatment received by Magnuson.  Magnuson alleges disability as of January 1996  Yet the ALJ notes that she sought treatment in only sporadic instances during the course of a ten-year period: (1) from Dr. Halpern on January 3, 2005, September 19, 2005 and February 6, 2006; (2) from Dr. Robert Sayad on May 22, 2006; (3) from the Santa Cruz Women's Health Center on June 1, 2007; (4) from D. Cavanaugh, MFT on August 8, 2007; (5) from the Santa Cruz Women's Health Center on August 29, 2007; (6) from Beverly Melby, LCSW on November 5, 2007; (7) from a psychiatrist and Deborah Burton, LCSW on an unknown date.  The ALJ further and expressly notes that there was never any assessment from any doctor or other professional that Magnuson was precluded from working entirely.

In further support of his conclusions, the ALJ next notes that Magnuson was reluctant to take medication.  Under *Parra v. Astrue,*[51] the Commissioner notes that evidence of conservative treatment is a valid basis to reject claimant's allegations of disability.  In addition, under *Fair v. Bowen,*[52] an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment is a proper basis to doubt credibility.

Finally, the ALJ supports his conclusion by noting that Magnuson's ability to engage in certain daily activities was inconsistent with her claims of disability.  For example, in his opinion, the ALJ pointed out that Magnuson attended school, completed household chores, and engaged in grocery shopping.  Magnuson's ability to conduct household responsibilities and engage in certain day-to-day activities is inconsistent with a claim that Magnuson was unable to perform all work

---

[50]   AR at 20.

[51]   481 F.3d 742, 750-51 (9th Cir. 2007).

[52]   885 F.2d 597, 603 (9th Cir. 1989).

activity.

Based on the above, the court finds that the ALJ has provided clear and convincing reasons to reject Magnuson's testimony regarding the intensity, persistence and limiting effects of her symptoms. Affording the ALJ's credibility determination the deference to which it is entitled, the court finds no error.

**C.    The ALJ Did Not Err in Using the GRIDS and For Failing to Credit the Testimony of the Vocational Expert in Response to a Hypothetical**

Magnuson states that the ALJ erred by referring solely to the Medical-Vocational Guidelines ("GRIDS") to determine that she was not disabled. Because Magnuson's limitations are exclusively nonexertional, she argues that the ALJ's reference solely to the GRIDS was improper. Magnuson points out that a vocational expert did testify at the hearing and that the ALJ simply ignored his opinion even though he concluded that in light of Magnuson's age, education, lack of work experience, Sayad's medical opinion (had it been corroborated), and other medical evidence, there would be no work for Magnuson to perform in the national economy. Indeed, Magnuson notes that the ALJ failed to mention in his opinion altogether that a vocational expert had even testified at the hearing.

The Commissioner states that Magnuson's argument is wrong for at least two reasons: (1) the ALJ is not precluded from referring to the GRIDS even if Magnuson's limitations are strictly nonexertional; and (2) the ALJ may disregard testimony from the vocational expert if it is not supported by the evidence. The Commissioner argues that the ALJ's conclusion that Magnuson's nonexertional limitations would have little or no effect on the occupational base of unskilled work at all exertional levels was reasonable and supported by substantial evidence. He also claims that the hypothetical posed to the vocational expert during the hearing, as recounted by Magnuson, was inaccurate. Magnuson assumes that Sayad concluded, when he did not, that she had functional limitations regarding maintaining concentration and persistence to complete a workday and workweek without interruption. The ALJ's failure to reference the testimony of the vocational expert, and specifically the hypothetical, was proper because it was not supported by the evidence.

The GRIDS were promulgated in 1978.[53]  They provide a system "for disposing of cases that involve substantially uniform levels of impairment."[54]  The GRIDS correlate a claimant's age, education, previous work experience, and RFC to direct a finding of disabled or not disabled, without the need of testimony from vocational experts.[55]  The GRIDS, however, only apply "where they completely and accurately represent a claimant's limitations."[56]

The GRIDS present in table form a shorthand method for determining the availability and number of suitable jobs for a claimant.[57]  The GRIDS categorize jobs by three physical "exertional" levels, consisting of sedentary, light and medium work.[58]  These exertional levels are further divided by the claimant's age, education and work experience.[59]  The GRIDS direct a finding of disabled or not disabled based on the number of jobs in the national economy in the appropriate exertional category.[60]  A claimant must be able to perform the full range of jobs in an exertional category for the GRIDS to apply.[61]

An ALJ must apply the GRIDS if a claimant suffers only from an exertional impairment.[62]  The GRIDS direct a ruling of disabled or not disabled.[63]  If the GRIDS direct a finding of disabled,

---

[53]   *See generally Heckler v. Brown,* 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

[54]   *Desrosiers v. Sec'y of Health & Human Services,* 846 F.2d 573, 578 (9th Cir. 1988) (Pregerson, J., concurring).

[55]   *Cooper v. Sullivan,* 880 F.2d 1152, 1155 (9th Cir. 1988); *Heckler,* 461 U.S. at 461.

[56]   *Tackett v. Apfel,* 180 F.3d 1094, 1101 (9th Cir. 1999).  *See also, Heckler,* 461 U.S. at 462 n.5.

[57]   *Tackett,* 180 F.3d at 1101.

[58]   *Id.*

[59]   *Id.*

[60]   *Id.*

[61]   *Id.*

[62]   *Cooper,* 880 F.2d at 1155.

[63]   *Id.*

1    the ALJ is bound by that result.[64]

2         The Ninth Circuit recognizes that nonexertional limitations may make the GRIDS

3    inapplicable.[65]  Nonexertional limitations are non-strength related limitations that include mental,

4    postural, manipulative, sensory, or environmental limitations.[66]  If the claimant has nonexertional

5    impairments which limit his exertional capabilities, the GRIDS may only be used as guidelines.[67]

6    The GRIDS may still be used if the nonexertional limitations do not significantly limit the range of

7    work permitted by the exertional limitations.[68]  However, if the nonexertional limitations are

8    sufficiently severe so as to limit the range of work permitted by the exertional limitations, the ALJ

9    must take the testimony of a vocational expert and identify specific jobs within claimant's

10   capabilities, rather than applying the GRIDS.[69]

11        Here, the ALJ recognized that Magnuson's ability to perform work at all exertional levels

12   had been compromised by her nonexertional limitations.  However, based on her residual functional

13   capacity, age, education and work experience, the ALJ concluded that she was capable of

14   performing "simple, repetitive tasks at all exertional levels" or unskilled work.  He reasoned that

15   Magnuson's nonexertional limitations had little or no effect on the occupational base of unskilled

16   work at all exertional levels.  The court finds that the ALJ's conclusions are supported by substantial

17   evidence. Contrary to Magnuson's view that Sayad concluded that she had functional limitations

18   with respect to maintaining concentration and persistence, he in fact assessed her as not significantly

19   limited in her ability to understand, remember and carry out very short and simple instructions.  He

20   further opined that she had a fair ability to interact appropriately with co-workers, supervisors and

21   the public.  Only because of the limitations of a one-time evaluation and without the benefit of

22   corroborative records did Sayad qualify his opinion regarding any conclusions as to whether

23

24        [64]    *Id.* at 1157.

25        [65]    *Tackett,* 180 F.3d at 1101-1102.

26        [66]    *Cooper,* 880 F.2d at 1155 n.7.

27        [67]    *Razey v. Heckler,* 785 F.2d 1426, 1430 (9th Cir. 1986).

28        [68]    *Blacknall v. Heckler,* 721 F.2d 1179 (9th Cir. 1983).

          [69]    *Kail v. Heckler,* 722 F.2d 1496 (9th Cir. 1984).

1   Magnuson could maintain a level of concentration and task persistence necessary to perform work

2   activities within a schedule and to complete a normal workday and workweek without interruption

3   from untreated psychologically based symptoms.   In light of the ALJ's conclusion that Magnuson's

4   nonexertional limitations were not sufficiently severe, his reference to the GRIDS as a guideline was

5   appropriate to determine the availability of unskilled work in the national economy.  Moreover, the

6   court agrees that the ALJ did not err when he rejected the hypothetical as posed to the vocational

7   expert because it did not reflect the actual opinions of Sayad.  It was therefore acceptable for the

8   ALJ not to consider, or mention, the hypothetical in rendering his decision.

9                                          **IV.  CONCLUSION**

10          Magnuson's motion for summary judgment is DENIED and the Commissioner's cross-

11   motion for summary judgment is GRANTED.

12          **IT IS SO ORDERED.**

13   Dated:   September 29, 2011

14                                                        _____
                                                         PAUL S. GREWAL

15                                                        United States Magistrate Judge